**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

01-9118-CIV

Case No: 2-80002-CIV-Ryskamp

IDT GROUP, INC.,

    Plaintiffs.

vs.

LA JOLLA. FRESH SQUEEZED COFFEE, INC.,
KURT TONEYS and CODY ASHWELL,

    Defendants.

_____/

## FIRST AMENDED COMPLAINT

Comes Now the Plaintiffs, IDT GROUP, INC.. (hereinafter "IDT") by and through undersigned counsel and hereby sues the Defendants, LA JOLLA FRESH SQUEEZED COFFEE, INC. (hereinafter "La Jolla"), KURT TONEYS (hereinafter "Toneys") and CODY ASHWELL (hereinafter "Ashwell") and in support thereof sets forth the following:

### JURISDICTION

1.    IDT Group, Inc. is a Florida corporation located and doing business in the Southern District of Florida and the successor to IDT Fund, Ltd.

2.    Defendant La Jolla Fresh Squeezed Coffee, Inc. is a publicly traded company which pursuant to long-arm jurisdiction is conducting business in the State of Florida

3.    Defendant Kurt Toneys was the President of Defendant La Jolla Fresh Squeezed Coffee, Inc. during all material times set forth in this complaint. He has entered into agreements and conducted business in the State of Florida and thereby, is subject to this court's long-arm

1



jurisdiction.

4. Defendant Cody Ashwell is a resident of the State of Nevada and previously acted as a silent partner of Defendant Toneys prior to becoming Chairman of LaJolla, and has conducted business in the State of Florida and is thereby, subject to long-arm jurisdiction.

## FACTUAL ALLEGATIONS

5. On or about July of 1999, IDT purchased shares of restricted stock in Defendant La Jolla and the monies from said purchase were used to directly benefit the business and survival of Defendant La Jolla (the "Stock Transaction").

6. The Stock Transaction involved the purchase of securities subject to Rule 144 of the Securities Act of 1933 and thereby, were to be restricted from trading for a period of one-year from July of 1999.

7. On the one year anniversary of the Stock Transaction, IDT forwarded the purchased stock with an opinion of counsel letter and all appropriately filled out Rule 144 paperwork, as required by the Rules and regulations promulgated under Rule 144 of the Securities Act of 1933.

8. Upon Defendant La Jolla and Defendant Toneys receiving a copy of the restrictive legend removal request, Defendant Toneys indicated that he and Defendant Ashwell were unwilling to allow any stock in the company to become free trading, as it would affect the ability of the Defendant company to raise monies since the securities purchased in the Stock Transaction could have a negative effect on the Defendant company's stock price.

9. Defendant Toneys was advised that his conspiracy with Defendant Ashwell to restrict the amount of freely tradable shares in the Defendant company was a violation of civil and criminal

statutes. Thereafter, Defendant Toneys acknowledged the illegal conduct of himself and Defendant Ashwell and thereafter, agreed to remove the restrictive legend.

10. Thereafter, the brokerage and investment firm of Deutsche Bank Alex Brown contacted Mr. Toney's after the securities had still not been released for trading and Defendant Toneys then stated that he would not remove the restricted legend on the securities because Defendant La Jolla was a small company, which did not have the money to issue an opinion letter.

11. Thereafter, Defendant Toneys was advised that an opinion letter had already been submitted and it was clear that Defendant Toneys was attempting to stall the release of lawful securities by creating an excuse.

12. Subsequently, Defendant Toneys then stated that he would not remove the restricted legend on the securities purchased in the Stock Transaction, until he was given an opportunity to purchase said securities back at a price well below the then quoted public market price of Defendant La Jolla. Defendant Ashwell also made offers to purchase the stock at substantial discounts and advised that if the stock was not sold to him at a discount then he would make sure that the shares would not become free trading regardless of the excuse either he or Toneys would make.

13. Defendant Toneys has left multiple voice mail messages wherein he has stated on recordings, his intent to violate the federal securities laws. He has also left messages claiming he removed the restrictive legend when, in fact, that has not occurred.

14. While Defendant Toneys and Defendant Ashwell have refused to remove the restrictive legend off of the Plaintiff's stock, the Defendants' have undertaken a course of conduct to artificially inflate the price of Defendant La Jolla by refusing to allow lawful securities to be traded and

3

thereby, decreasing the supply of stock in the marketplace so that the share price of Defendant La Jolla is artificially higher than it would be. The Defendants thereafter allowed themselves and associates to remove their restrictive legend and sell stock before the total collapse of the Company's stock price.

15. The Plaintiff has been severely injured, based on the conduct of all of the Defendants, as the Plaintiff and its brokerage firm have detrimentally relied upon misstatements made by the Defendants as to having removed the restrictive legend off of shares.

16. Defendants continue to make excuses claiming that shares cannot be unrestricted, including making statements that the Plaintiff does not own shares in the Defendant company while at the same time trying to purchase said shares at a discount and solicit proxies.

## COUNT I
### Brought by the Plaintiff
### Against
### All Named Defendants Under Section 10 (b) of the Exchange Act and Rule 10(b)-5 Promulgated Thereunder
### (Fraud or Deceit - Manipulative and Deceptive Devices)

17. The allegations of paragraphs 1 through 16 are incorporated herein and realleged as though fully set forth.

18. This Count is brought on behalf of the Plaintiff.

19. Prior to and throughout the time the Plaintiff received their stock in the Defendant, the named defendants, directly and indirectly, singly or in concert, and aiding and abetting one another, engaged in an unlawful combination, conspiracy and course of conduct pursuant to which defendants defrauded Plaintiffs. Defendants made various untrue statements of material fact and omitted to state other material facts necessary in order to make the statements made, in

light of the circumstances in which they were made, not misleading to Plaintiff. Defendants' misrepresentations and omissions herein alleged constituted a device, scheme or artifice to defraud Plaintiff and constituted acts, practices and courses of business which would and did operate as a fraud or deceit upon Plaintiff in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

20. The purpose and effect of Defendants' misrepresentations and omissions, all of which were part and parcel of a common scheme and conspiracy to defraud, was to cause the Plaintiff to convert into or to purchase securities of Defendants and to make such purchases for grossly excessive consideration. Each such omission and misrepresentation was interconnected and each of them, singly and cumulatively, concealed the true condition of and intentions of the Defendants from Plaintiff and the investing public and all such acts had the effect of supporting the market prices for Defendants' securities.

21. The fraudulent practices and devices utilized by the defendants in order to effectuate the aforesaid fraud, consisted of misrepresentations of material facts by the defendants, who knew or should have known them to be false when made, who intentionally concealed them and who failed to disclose omitted material facts which were necessary in order to make the statements made not misleading to Plaintiff.

22. These misrepresentations and omissions, as described herein, were wholly or in part contained in or omitted from the prospectuses, annual reports, interim reports and press releases, including but not limited to those documents specified above, all of which were prepared by Defendants with the participation, acquiescence, cooperation, encouragement and assistance of the management of defendants herein. Each defendant joined this common scheme and

conspiracy at or about the time he either became an officer or director of each.

23.    Defendants, by the acts and transactions set forth herein, have used the means and instrumentalities of interstate commerce, and of the mails, to engage in acts, practices, courses of business and manipulative and deceptive devices and contrivances, all constituting and operating as a fraud in violation of Section 10(b) of the Exchange Act and the rules and regulations promulgated thereunder.

24.    By reason of Defendants' misrepresentations and omissions, as alleged herein, the market price of Defendants securities was caused to be inflated artificially, with the intent and result of deceiving and inducing Plaintiff to purchase and/or convert the securities at the inflated market prices, and thereby, Plaintiff has been injured.

Wherefore, Plaintiffs request general damages, punitive damages, trial by jury and such other relief as this court deems appropriate.

## Count II
### Brought by Plaintiff on
### Fraud and Reckless Misrepresentation against
### all Named Defendants.

25.    The allegations of paragraphs 1 through 16 are incorporated herein and realleged as though fully set forth.

26.    In committing the acts and practices alleged, defendants acted fraudulently and recklessly to the detriment of Plaintiff in violation of common-law principles of fraud and reckless misrepresentation. Defendants made intentional misrepresentations of material fact, which the Plaintiffs detrimentally relied upon and were damaged.

27.    Plaintiff has been damaged as the proximate result of defendants' wrongful conduct.

Wherefore, Plaintiff requests general damages, punitive damages, trial by jury and such other relief as this court deems appropriate.

## Count III
### Common Law - Negligence

28. The allegations in paragraphs 1 through 16 are realleged and incorporated herein.

29. The conduct of defendants described above constitutes negligence and such negligent conduct caused damages to Plaintiff. Said Defendants owed Plaintiff a duty and breached said duty.

30. As a result of the negligence of defendants, Plaintiff suffered damages.

Wherefore, Plaintiff requests general damages, punitive damages, trial by jury and such other relief as this court deems appropriate.

## Count IV
### Common Law - Misrepresentation

31. The allegations in paragraphs 1 through 16 are hereby realleged and incorporated herein.

32. Defendants, by their conduct, breached their common-law duty to the Plaintiff by fraudulently concealing from Plaintiff and failing to disclose all material facts regarding the financial condition of Defendants and by affirmatively making untrue statements about Defendants, as previously alleged.

33. Defendants engaged in this conduct with the intent to deceive, manipulate or defraud or with a reckless disregard.

34. As a result of the violations of law described in this claim, Plaintiff suffered damages.

Wherefore, Plaintiff requests general damages, punitive damages, trial by jury and such other

7

relief as this court deems appropriate.

## Count V
### Breach of Fiduciary Duty

35. Paragraphs 1 through 16 are realleged.

36. Defendants owed fiduciary duties to Plaintiff with respect to disclosing all relevant information regarding the Plaintiff's investments and releases of their securities.

37. The misrepresentations and omissions set forth above, and the participation by the Defendants in the promotion of the investments, the actions with respect to financing and the manner in which the defendants performed their duties constituted breaches of their fiduciary duties to Plaintiff.

38. By virtue of Defendants' breaches of fiduciary duties, Plaintiff has been damaged in the amount of their investments, plus lost use of the money invested, and other damages.

Wherefore, Plaintiff requests general damages, punitive damages, trial by jury and such other relief as this court deems appropriate.

David J. Feingold, Esquire
Florida Bar No. 0892823
FEINGOLD & KAM LLC
Gardens Plaza Office Tower
3300 P.G.A. Boulevard
Suite 410
Palm Beach Gardens, FL 33410
Phone: (561) 630-6727
Fax: (561) 630-8936

8

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been sent via U.S. Mail to

Gary M. Dunkel, Esquire at Greenberg, Traurig, 777 South Flagler Drive, Suite 310 East, West Palm

Beach, FL 33401on this 25th day of February, 2002.

David J. Feingold, Esquire
Florida Bar No. 0892823
FEINGOLD & KAM LLC
Gardens Plaza Office Tower
3300 P.G.A. Boulevard
Suite 410
Palm Beach Gardens, FL 33410
Phone: (561) 630-6727
Fax:  (561) 630-8936